Your Honor, my name is Sandy Borer. I and Ms. Harrington sitting to my left represent the intervenors below, Miami Herald and their reporter Julie Brown. The district court ruled against us when we intervened after the case was over. That's the posture for us. We're asking the court to reverse the district court's order and direct the district court to conduct the document-by-document review that's required by law to determine whether a document should be sealed in its entirety or redacted, in part, to protect. You don't deny that some documents are worthy of sealing in this case? Your Honor, we know so little about what is in the file because of the way it proceeded that I can only say one would assume that there are going to be pieces of information in documents in the record that should either be sealed or redacted, whatever would be appropriate. But I don't know because all we have is what's on the record. So after the district judge allowed the lawyers to simply file sealed documents, we have no idea what those are. Before that, the district judge said in his order he had 18 hearings and 15 adjudications, but we don't know what the hearings were about because those are now sealed, and we don't know what the adjudications were. But we do know that that involved judicial effort and effort. There was a summary judgment motion made and granted. I'm sorry? There was a summary judgment motion made and granted. The summary judgment motion was denied, I think, Your Honor. The summary judgment motion is — I can't see any of it. The order is half — as I understand, half of the order. That's more of the other appeal than mine. But half of that order is also redacted by the trial judge. Mr. Boer, help us a bit to understand your situation. If you were to prevail here, what is the decree that you ask us to enter? What should we be telling the district court and the world? I think you should be telling the district court and the world that under the common law of the United States and the First Amendment to the United States Constitution and the law that's set forth in so many of the decisions we've been citing, that there's a presumption of openness with virtually every document. And that presumption of openness requires that someone seeking to seal or redact come forward and say, you should seal this document in its entirety or redact it to protect someone or some interest, one by one. Now, you ask exactly — and that was my next point, and I'm glad you asked — I'm from Florida, so take it for what it's worth. I routinely have cases in Florida in which people are asserting exemptions to our public records law or to judicial records being open to the public. I have been routinely allowed by judges all over Florida to participate in the hearing where they decide, should this be redacted, should this be sealed or not. I do that every time with an order from the court that I'm not permitted to talk to my clients. So my client here, Ms. Brown, I had a case involving her in Tallahassee. Sotomayor, you're allowed to hear what they — what sealing is proposed for. Exactly. I see the document in its unsealed, unredacted form. And what happens then is you have a — generally speaking, there will be a few objections, different in different cases. In this one, the trial court identified privacy rights, but there could be other rights that we just haven't identified because he did not go document by document. But assuming there's one or two or three possible reasons why a document should be sealed or redacted, you go through the first document. So if I can make this easy, let's say there's 15 depositions of women who claim to be victims of Jeffrey Epstein. I'm not saying they were or not. And some of those women want to remain anonymous. Some of them have actually come out public now and don't. They have no problem being identified. For the ones who want to remain anonymous, you can redact it. What we do in — for example, in — Redact name, age, what else? Anything identifying. So what we do in what we call dependency court in Florida is we will do initials sometimes or a number other times, and we wipe out all the identifying information, where they live, even the neighborhood sometimes, when it's children, school they go to, things like that. And you just stick to whatever the substance was. In this case, we would do the same thing. And so what I found is it doesn't take long for everyone to understand what everyone's position is. And the judge, or it could be a magistrate judge, says, okay, so your argument is the same one you made with regard to the last one. And that person says yes, and the judge says, well, my ruling is this. And it goes pretty fast. We did 400 documents in about three or four hours in one case I had. And that's what I would propose happened. And unfortunately, we're in a position where because it was never done, everything stacked up. And — There are 167 documents, I think, that are sealed now. I don't know the total number. And I don't know the total number of pages. By the way, when you do this, sometimes you have to go page by page because — Can I ask you about something before Judge Mara in Miami? But there was a joiner motion filed that was denied by JIFRA. Jane Doe number three, I think she was identified, right? And in that motion, there's an extensive description of what she claims happened. Right. Which seems to cover almost everything. Why do you need this information? My understanding is that that motion was in the public realm for a while, and then it was ordered sealed in the district court in Miami. But the news organizations had the benefit of that for some time. Am I right about that? And what more do you need than that? I don't know. I know it about the same way you do. I know generally a lot of her allegations, which obviously are disputed by some people, including Professor Dershowitz, became public for one reason or another. I don't know what happened after that. My client's interest in this is not in the salacious details that may or may not be true, that Ms. Jifra, her allegations. It's much broader than that. And my client has written about it, and only part of that's in this record, so I'll stick with what we put. But so she's, of course, Ms. Brown's written about what's happened in front of Judge Mehra, and there have been developments, and what have you. We're not just interested in what she says. There's lots more in this record, and there's explanations going back and forth. And to be fair, if I can just use Professor Dershowitz, he says if you put the whole record out, his name is cleared. If you don't, he's smeared. And I would say that's one more reason why, and he has agreed to our motion, that we open the whole file up, that the file should be open. If you look at what the reasons are for closing it, Ms. Jifra doesn't want it closed anymore. She's the alleged victim. I'm not making any characterizations of truth or falsity. Mr. Dershowitz wants it open. My client wants it open. So you're left with two categories of people, Ms. Maxwell, and there can only be a tiny fraction of the file that relates to her personal private life. The rest of it relates to other people. And on the other side of it, there's the third parties, including women who claim they were victims of Mr. Epstein. And we can protect all them. We routinely do it in courts all the time. And somehow I've run- The proposal is that we send this to the district court to go document by document. Redact what is redactable based on our discussion. That's personal, name, age, address. Exactly what the law provides. That's how we do it all the time, in all our Federal courts and at least in Florida, all our State courts. And it's routinely done. And who is opposed to that proposal? Pardon? Who is opposed? Is it only Ms. Maxwell? And why is she? Well, we'll ask her. She can talk. So somehow, I've used up my eight minutes. I reserve two for response. All right. Okay. What happened below is unfortunate. And when I listen to Judge Sweet, what happens is the lawyers are filing things all the time. They're just filing things. It doesn't matter who's right or wrong or whether they should or shouldn't. So he gradually got to the point where he simply abdicated his role as the judge. And then the documents piled up sealed. And we ended up with a sealed record that truly, what's in that record, large parts of it, not just Ms. Juffray's allegations, are in the public interest, especially today. And Mr. Epstein, for good or bad, is a focus of some things that are really important today. And my client's already gotten an award for her writing about this subject. And we feel this is something the public needs to know about. More generally, the whole purpose of having records open and having this process is because part of the function is for the public to see how the judges are doing and for judges to see how judges are doing. And so we really believe that's the only way we can do this. And we can do it efficiently. It won't take nearly as long as someone thinks. And thank you. I'll come back for my two minutes. May it please the Court, Taiji appearing on behalf of Ms. Maxwell. So is it true she is the only person resisting full disclosure? I can't speak for all the parties. And I don't actually think that, having said that, I don't think that Ms. Juffray herself has taken a clear position on this. Her position, as I understand it, is that Ms. Juffray, the co-appellee, her position is that all of it should be open. But then she has this asterisk. The asterisk is that I want certain things not to be disclosed. And if I can't have some of those not disclosed, then I want the status quo. That's my understanding of Ms. Juffray's position. But Mr. Cassell is here to speak for her. And I'll leave it at that. But, Your Honors, I don't believe that Ms. Juffray's position is quite the same as the Miami Herald's position. Do you object to Judge Cabranes' proposal that we send this to the district court to make specific on-the-record findings, document by document, to see whether they should have been disclosed or not? I mean, how can we conclude that that happened in this case when there's no findings about any of the 167 documents? Well, Your Honor, I would say that there are not contemporaneous specific findings, as you're suggesting. I agree with that. But I think that it would be unfair. What about after the fact? Where are they? Right. Well, okay. So the best that we have is Judge Sweet's final order. I have not heard anyone complain that Judge Sweet got the law wrong in his final order. In fact, insofar as I can tell, he hit every single case that was important. I think it's unfair to Judge Sweet to examine this case without an appreciation of what he was confronted with in this case. This is a case, as the Court is aware, where you have a plaintiff, from our perspective, an extraordinary case where she's manufactured a lawsuit from her own misconduct. First, she makes false accusations against Ms. Maxwell. When Ms. Maxwell says, I deny these allegations, then — You're a liar. Exactly. Well — She's a liar, and then she's sued for defamation. That's right. But every time you say something is false, as I would think that the Second Circuit would — or as the State, of course, cases would say, you have the right to deny it. I think that Ms. Giffray's position is that when you deny what I said, you're calling me out as a liar. You don't have to use the word liar, Your Honor. It seems to me — We're not looking at the law of defamation in New York today. We're looking at the law of sealing documents. How can you say that his order complied with the law he recited in it? Where's the specific findings for the 167 documents? Well, the 167 documents that the Court is referring to, these were — I was mentioning before about — What about the judicial documents, then? Sure. Judgment, denial, and then the documents that he considered in arriving at that conclusion. How were those judicial documents identified with specific findings as to why they should be kept from the public? Well, with regard to the specific findings, again, Your Honor, the best we have is the order that Judge Sweet entered. I think that we have to appreciate where this district judge was. There were upwards of 1,000 filings in this case. The protective order was entered early on in March of 2016, and then the sealing order was entered a few months later because the judge was wholly overwhelmed by the number of documents that were submitted in support of or in opposition to a particular motion. This panel consists of three former district judges, so we have some familiarity as to how to cut to the chase on these matters. Let me just ask you directly. Yes. Let's just take the summary judgment record, including Judge Sweet's opinion denying summary judgment. Is there any reason why that shouldn't be unsealed? There are reasons, Your Honor, and let me come up with — let me offer two to the Court. First of all, one of the bedrock rules relating to access to court files is that there is no such thing as a rule that permits all documents to be exposed to the public, even in the Nixon case, which is the bedrock case. We know that not everything gets exposed to the public. There are countervailing factors. So that's one. The second thing, Judge Cabrera, is there are three cases that talk about the reliance on protective order. Your Honor wrote one of them, the Street case. There was the Martindale case. And then we have — Lugosia itself talks about this. In every single one of these cases, when there has been reliance on a protective order, in this case, one was entered at the outset. And it's worth noting to the Court that in order to secure Ms. Maxwell's immediate deposition, what Ms. Giuffre's counsel said to the — to Judge Sweet was, you let — if you give me this deposition, I will immediately agree to a protective order. When there was no evidence that Ms. Maxwell participated in any kind of sex trafficking conspiracy, they proceeded to ask more and more sensitive questions, including questions relating to consensual sex with adults. And when Ms. Maxwell resisted this, Judge Sweet ordered her to answer these questions on the idea that there is a protective order in place. So what — so Judge Sweet is permitting expansive and highly intrusive questions into a person's perfectly legal sexual behavior. Can it find its way into the summary judgment decision? The — I can't say for sure whether or not that — those specific topics did, but there were — Is there anything in the summary judgment decision that's not in the public? Yes. There is? Yes. Both parties in — in moving for summary judgment, and particularly in opposing summary judgment, introduced a — a large quantity of information, for example, from depositions of non-parties relating to their own sexual behavior. And so this — this is a case where — where — You're saying that found its way into the summary judgment opinion? Not into the — oh, the opinion. I do not believe that Judge Sweet actually discussed those kind of private sexual matters in the — in the decision in detail. All right, so let's just focus on the opinion for the moment. Is there any reason why his opinion denying summary judgment should not be unsealed? Your Honor, I think I would — I'd have to go back to the opinion and look and see just how sensitive some of his findings were. What I'm confused by is that there — he's incorporating some of the findings that were — that were proposed by the parties, for example, where there was no — no contest on some of the factual findings. I think he's incorporating some of those. And I don't — I'd have to take a look at the — specifically what he's incorporating. There were specific factual findings under 56 — the 56.1 statement that the parties submitted to — to the court. I'm out of time, and — No, no. Okay. All right. We still have some questions for you. You heard Mr. Borer's suggestions as to how mechanically this can be accomplished. Yes. Do you have any problem with that? I do, Your Honor. Why? The problem I have with it is twofold. One is that there is no precedent whatsoever in the Second Circuit in the Southern District of New York for the procedure that Mr. Borer has proposed. There is not — and what that means is that when the parties agreed to the protective order — we're talking about Ms. Giuffre and Ms. Maxwell. Let me understand this. Yes. Before you go much further. As a result of what you seem to think is a doctrine of reliance on an earlier order of the court, you would have a — is there anything that should be unsealed? I don't believe that there is anything that — Nothing can be unsealed in this case. Not based on Judge Sweet's findings, to the extent that he made findings. And, Your Honor, I think we have to understand that Judge — You can't possibly be serious. I am, Your Honor. Judge Sweet was familiar with every single submission that was made to the court. And we can break it down into essentially two categories. Isn't the presumption quite the opposite of what you claimed earlier? That is, the presumption has to be of openness that these materials should be available to the public. That's the presumption. And it's your burden to overcome that presumption, isn't it? Yes, and we did, Your Honor. And how do you do that? We did — Just because Judge Sweet said so? Well, we did that because of Judge Sweet's order. Judge Sweet was familiar with every single submission that was made to the court. And Judge Sweet, at the end of the day, a year after the case was closed, he was able to write a comprehensive opinion discussing why these materials were not — were sealed and why they should not be unsealed. Would you say that applies to the blanket sealing order as well, where he said, I'm not going to rule on any motions anymore. You just file them and tell me they're unsealed and they're unsealed. Everything was filed and sealed after his blanket order. Yes. Did you hear my question? So is your — does that argument of yours apply to the blanket sealing order, which was after the original protective order, where he said, I'm not going to rule on any individual motions anymore. You just file them and they're sealed. You don't have to make a showing to me. I don't have to do anything. They're just sealed. How is that consistent with our case law? It's consistent with the case law because that's how virtually every district judge handles blanket and umbrella protective orders in the United States. They do not look at every single submission and apply these kind of rules. Now, let's keep in mind that, again, the 1,000 filings in front of this Court, there were 52 motions that were pending on the eve of trial that had not been ruled on. This spanned thousands of pages that he had not gotten to, and he was unlikely, frankly, to get to if there had not been a settlement of the case. Now, if Mr. Boer and the Court is suggesting that Judge Sweet had to have ruled on every single motion to do the Amadale analysis for every single one, I don't think that we would — we wouldn't have 52 motions pending. We'd probably have several hundred pending. And so we're — Explain why. I'm sorry? Explain why all these motions would be pending. If the judge ruled on every document that came before him, redacted what was necessary to redact, didn't redact what was not necessary to redact, and you all went on your way, why would there be motions to object? I'm not sure if the Court appreciates the volume of material that was — There were 167 sealed documents, many of them many pages long. So it's volume. Okay, we know how to deal with volume. What's the issue? The issue is that under the protective order that Your Honor is referring to, the Court required the parties to show good cause before they could designate anything confidential under the protective order. And, of course, the Court was very familiar, as this Court can see from Judge Sweet's own ruling, his own decision. He was very familiar with the private sexual matters of both parties and non-parties. And that was the reason for both the original protective order and then what we call the sealing order from August of 2016. What the Court was trying to do was come up with a way to survive this onslaught of papers. The list of items that were sealed include motion response brief, reply brief, notice of motion, declaration, motions in limine, motion brief, declaration. I mean, just trying to have a catalog of everything that was filed under seal, pursuant to that second general sealing order, they look like motions to compel discovery, motions for evidentiary rulings at the trial. How does that fit into this? Well, I think what the Court is seeing is that when the Miami Herald filed its unsealed motion a year after the case was over, Judge Sweet, this is my assumption because I don't know Judge Sweet's practices, but he did take, to my way of thinking, sufficient time, I believe, to go through the motions that were issued, the ones that were identified by the Miami Herald in its unsealed motion, and prepared the opinion that was appealed. I think that for this Court to remand to Judge Sweet to do what I understand that he already did, which is the subject of this appeal. He never did. He never went document by document. My inference from reading his opinion, the one that is the subject of this appeal, is that, in fact, he did. What I call Jeffrey 3. I'm sorry? What I call number 3 in his series of opinions, right? Jeffrey 1, 2, and 3. This is 3. Okay. I'll accept that, Your Honor. That one, you think he went document by document? I believe he did because these documents were submitted or they were identified by the Miami Herald as part of its motion to unseal. And that is what led Judge Sweet, in my view, to write the comprehensive decision that he did to address all the issues that were raised by the Miami Herald. He addressed the issues, but not the documents. He did not make specific findings as to each document, no. And what I'm suggesting to the Court is that we have these two categories of documents. What I would call discovery-fighting documents, where people are asking for more or suggesting there should be less discovery. And then we have what Judge Cabrera has talked about as being the substantive motion, the motion for summary judgment. And ‑‑ Can I just follow up on something? Yes. You say that it would have been impossible for him to get ready for trial with the mountain of rulings he would have had to make. But what about after the Miami Herald filed its motion to unseal? Yes. Things had settled down. There was a settlement in the case. Why couldn't he then conduct the individualized review and findings at that point? I believe he did. Well, I mean, with regard to ‑‑ Or is it reflected in his opinion? Okay. Let me restate that. What I believe that Judge Sweet did was that after the Miami Herald came in, a year, close to a year after the case had been settled and closed, Judge Sweet went back, heard the motion, took oral argument on the motion, and then drafted his decision. I believe that Judge Sweet looked at every single document that was identified by the Miami Herald and drafted this opinion. Did he go line by line and redacted word by redacted word to make specific findings? I don't believe he did that in that decision. And if that's what the Second Circuit is requiring Judge Sweet to do in these circumstances, I don't think that Judge Sweet would have known that, frankly. I believe that based on the motion made by the Miami Herald and after oral argument, Judge Sweet went through all of these documents that were identified by the Miami Herald and wrote that decision. And you could not have written a ‑‑ that's an extraordinary district court decision in terms of its comprehensiveness and in terms of the law. It's a beautiful survey of the right of access. He clearly understands the law. Well, yes, no doubt. But Mr. Borer is suggesting something. He can correct us if I'm wrong. You see that table behind you? A table like that with a court reporter, and you sit there and you go through the documents. This is not complicated. This does not require a complicated opinion. You go item by item. I think that's what he's suggesting, and it's something that I myself have undertaken many times as a district judge. What's the problem? Well, that's still not an Amadeo analysis, Your Honor. What Mr. Borer is suggesting is that we all go into a room. I don't know whether there's smoke in the room or not, but Mr. Borer and one, two, three other counsel, and perhaps a magistrate judge or the district judge. A court reporter, and you make decisions as you go along. This doesn't require an elaborate opinion on these various matters. Each document stands on its own and can be quite different from the other, and in each case you have document number 37. The presiding judge or the magistrate judge or the special master says, that will be turned over with a redaction of the name and social security number, et cetera. What's wrong with that? Judge Cabranes, the concept I think is perfectly fine, and I think that that's an appropriate order for the court if it finds that Mr. or that Judge Sweet did not comply with the Amadeo analysis. But we didn't do that, right? Not with regard to specific findings on the record, no. Now, the introduction by Mr. Borer of Mr. Borer into this analysis around the table, that's a new one, Your Honor. This is a matter for the parties when they entered into the protective order. When Ms. Maxwell and all these non-parties agreed to give highly sensitive information to the parties in a deposition or otherwise, for example, via a subpoena ducis tecum, they did not believe that one representative from one news medium was going to be present at the table that Judge Cabranes has identified. So that to me is a major problem with the proposal by Mr. Borer. I think we can trust Judge Sweet since he knows the law. If the court were to remand it, Judge Sweet knows exactly how to do this. He's been around that bench for quite some time. So that would be our proposal, that if a remand is necessary. What happens then? Tell us what happens then. How should he proceed if it's remanded? I would suggest that the court leave it to Judge Sweet's discretion. He has the law. He understands how to do it. He's probably himself done it multiple times. He just thought that this particular order was sufficient to accomplish the Amadeo, et cetera, case, the result that was required by the Second Circuit. Perhaps this panel will find that he was not correct. If that's so, send it back to Judge Sweet. He's a seasoned jurist and he can do it. Thank you. Mr. Cassell. Good afternoon, Your Honors. Paul Cassell for Ms. Virginia Giuffre. Let me make her position clear. She wants broad unsealing of the factual record in this case because it will demonstrate that Epstein and Maxwell sexually trafficked her to Epstein's friends, including Alan Dershowitz. And it is true that that information was provided under oath down to Judge Mara in Florida, but it's now been taken out of the record. In addition to that problem, what she was able to submit down in Florida several years ago was her information. And what exists in this factual record now is a number of other women, other witnesses who have come forward. The CVRA case you're talking about? That's the CVRA case. And she was able to provide an affidavit under oath about how she was sexually trafficked by Epstein and Maxwell in that case. But in this case, what we have are a number of women who were able to come forward and describe the sex trafficking organization. And I think it's important that we're hearing from Mr. G that there was consensual sexual activity. What she wants unsealed is the operation of the sex trafficking organization, and there is ample evidence in this record that will be unsealed to show that she was credible when she explained how Maxwell and Epstein had been sexually trafficking her for many years. How should this proceed on remand? It's very straightforward. Do you believe that there are some things that are, that can be redacted, even from the full record? We think that redaction will solve the problems. I mean, there are some things like Social Security numbers. Names. Names may need to come out of minor sexual assault victims. Identifying information, as the Herald is indicating. The substance of the affidavits. The substance. Unsealed. Correct. The operation of the sex trafficking organization, that information should come out. With that, you stand with Mr. Dershowitz and the Miami Herald. We stand with the Miami Herald. Mr. Dershowitz, to our view, has not. . . He's in a different position because he's seen everything. And he's also only asking to have three documents unsealed, as we understand his brief. She wants all the documents unsealed, substantively. You're on the same side with the Miami Herald, though. Essentially, yes. Okay. That's interesting. And mechanically, do you have any comments on how that would be done? I think your description of how to proceed sounds right to me. Okay. Thank you, Your Honor. Thank you. Mr. Borer, you've got two minutes. Just briefly, I've been a lawyer for 45 years, and I work in this area of sealing things and redacting things and denying access in State and Federal courts. Criminal and civil. I've never seen an order like the blanket sealing order where a judge completely abdicates his or her authority to the lawyers to seal, file documents. Confidentiality orders, yes. But all of those have process. If you want to file a document you've designated as confidential, the other side can object and force it to be filed in open court, and you have a dispute and it gets resolved, and there will be a finding from a judge that everyone can look to. I think it's interesting. Mr. Gee wants you to assume or believe what was in Judge Sweet's mind or what he did in his office,  And what's in the record is there was never either contemporaneously or subsequently any document-by-document review or, as far as we can tell, any review by any single document to determine whether that single document should see the light of day in public eye. We believe it should be reversed and sent back. I just have one comment. I know no one here knows me, but I'm a lawyer, and if I say I'm going to keep something confidential from my client, I'll do it. And I think I have a record of 45 years of being that way. I would like to be there because I think I can keep the process speeding along. Thank you.